Kamasinski v. NH Supreme          CV-95-10-M     02/27/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Theodore Kamasinski, On Behalf of
Himself and All Others Similarly Situated,
     Plaintiff,

v.                                          Civil No. 95-10-M

New Hampshire Supreme Court
     Committee on Judicial Conduct;
Hon. David A. Brock, Chief Justice
     of the New Hampshire Supreme Court;
Frederick K. Upton, Chairman of the
     Committee on Judicial Conduct;
William R. Johnson, Vice-Chairman of the
     Committee on Judicial Conduct;
David S. Peck, Executive Secretary of the
     Committee on Judicial Conduct; and
Robert L. Chiesa, Raymond A. Cloutier,
Douglas S. Hatfield, Jr., David A. Hodges, Sr.,
Walter L. Murphy, Donna P. Sytek, John R. Newson,
     Members of the Committee on Judicial Conduct,
     Defendants.


O R D E R


     Before the court is pro se plaintiff Theodore Kamasinski's

complaint, by which he seeks a declaration that certain rules of

the New Hampshire Supreme Court requiring confidentiality of

proceedings before the Committee on Judicial Conduct (the "CJC")

violate his First Amendment right to free speech.  The Magistrate

Judge issued a Report and Recommendation that plaintiff's

complaint be dismissed for lack of subject matter jurisdiction.

Fed.R.Civ.P. 12(h)(3).  Plaintiff filed a timely objection to the

Magistrate's Report and Recommendation.  Fed.R.Civ.P. 72.


I.  Discussion.

    After reviewing plaintiff's complaint, the Magistrate Judge

found that it fails to present a case or controversy under

Article III of the United States Constitution because it does not

describe a controversy ripe for judicial review.  The Declaratory

Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes federal courts

to grant declaratory relief when presented with an actual case or

controversy.  The Act itself, however, does not confer subject

matter jurisdiction.  Rather, it "makes available an added

anodyne for disputes that come within the federal courts'

jurisdiction on some other basis."  Ernst & Young v. Depositors

Economic Protection Corp., No. 94-1749, 1995 U.S. App. LEXIS 1387

at *12 (1st Cir. January 25, 1995).  And, as this court has

previously noted:

> A declaratory judgment action is appropriate to resolve
> a "`definite and concrete' dispute between adverse
> parties, appropriate to immediate and definitive
> determination of their legal rights."  This standard
> implicates the jurisdictional analysis of ripeness and
> precludes Article III courts from issuing advisory
> opinions.  In determining whether a pending action is
ripe for adjudication, courts must consider: (1) the fitness of
the issues for judicial decision, and (2) the hardship to the

parties of withholding court consideration. The fitness inquiry assesses whether there is a present case or controversy between the parties. The hardship inquiry "turns on whether the challenged action creates a `direct and immediate' dilemma for the parties."

VDI v. Price, No. 90-341-M, 1994 U.S. Dist. LEXIS 12913 (D.N.H. 1994) (citations omitted); see also Abbott Lab. v. Gardner, 387 U.S. 136, 149 (1967) (discussing the "fitness" and "hardship" aspects of the ripeness inquiry).

With regard to the "fitness" prong of this inquiry, "the critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young, supra, at *18. This inquiry "reflects an institutional awareness that the fitness requirement has a pragmatic aspect: issuing opinions based on speculative facts or a hypothetical record is an aleatory business, at best difficult and often impossible." Id. at *18.

It is axiomatic that a federal court's jurisdiction can be invoked only when the plaintiff has suffered some actual or threatened injury resulting from allegedly illegal or unconstitutional conduct. Warth v. Seldin, 422 U.S. 490, 499 (1975). And, as the court of appeals for this circuit has

3

cautioned, "the discretion to grant declaratory relief is to be exercised with great circumspection when matters of public moment are involved or when a request for relief threatens to drag a federal court prematurely into constitutional issues that are freighted with uncertainty." Ernst & Young, supra, at *14. Courts have also recognized, however, that:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, "he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."

Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (citation omitted); see also Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994) ("a litigant `does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.'") cert. denied, ___ U.S. ___, 130 L. Ed. 2d 211, 115 S. Ct. 298 (1994) (citations omitted).

Here, plaintiff argues that he "notified the [CJC] that he wished to petition the [CJC] to investigate allegations of misconduct against a New Hampshire judge but that he was

4

concerned by the free speech restraints imposed on complainants by the relevant . . . confidentiality rules." Complaint, para. 12. By letter dated May 24, 1993, plaintiff requested that the CJC waive enforcement of its confidentiality rules in his case. The CJC responded on August 27, 1993, stating that it had voted to "defer taking any action on [plaintiff's] letter of May 24, 1993, pending the outcome of an anticipated review of the Committee's confidentiality rules by the Supreme Court Advisory Committee on Rules." Uncertain as to whether the CJC would apply the confidentiality rules against him if he should file his petition, plaintiff initiated this proceeding.

At the core of plaintiff's complaint is the proposition that if he files the intended petition against an unnamed New Hampshire Judge, the confidentiality rules, if applied to him, would prohibit him from publicly disclosing the substance of his complaint or any facts relating to it, thereby depriving him of his constitutionally protected right to freedom of speech. He claims that, "[b]y refusing to waive the free speech restraints, imposed as a condition to effective consideration of the plaintiff's grievance, the [CJC] violated the plaintiff's First Amendment right of petition or right of access." Plaintiff's

5

Objection to Magistrate Judge's Report and Recommendation at 5. Accordingly, plaintiff asserts that his declaratory judgment petition is ripe for judicial review, and actual filing of the intended petition should not be deemed a prerequisite to the court's exercise of jurisdiction to determine the constitutionality of the CJC's confidentiality rules.

Plaintiff further asserts that if the court were to defer ruling upon his constitutional challenges to the confidentiality rules until _after_ he files his intended petition, he would be forced to elect either: (i) to exercise his constitutional right to free speech in facial violation of the confidentiality rules, thereby placing himself in jeopardy of serious sanctions; or (ii) to honor the confidentiality rules at the expense of his constitutional rights. He argues that after receiving the letter from the CJC deferring any ruling on his request for a waiver,

> Plaintiff was again forced to choose between exercising his first amendment guaranteed right of petition or exercising his first amendment right of free speech. The Plaintiff could have exercised his right of free speech concerning the allegations of judicial misconduct against a state judge while abstaining from the act of petitioning the Defendants for redress of his grievances against the same State Judge, or vice versa.

Plaintiff's Objection at 7.  Asserting that the mere existence of the CJC confidentiality rules operate to chill his exercise of his First Amendment rights, plaintiff argues that his declaratory judgment action is unquestionably ripe for judicial review and presents an actual case or controversy.  The court disagrees.

Plaintiff's complaint presents precisely the type of "speculative situation" referenced by the Court of Appeals for the First Circuit in Narragansett Indian Tribe, 19 F.3d at 693. While "[i]t is well established that a case is ripe because of the substantial hardship to denying preenforcement review when a person is forced to choose between forgoing possibly lawful activity and risking substantial sanctions," Presbytery of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1468 (3rd Cir. 1994) (quoting Edwin Chemerinsky, Federal Jurisdiction 103 (1989)) (emphasis added), here plaintiff does not presently face a choice between abandoning his right to petition the CJC on the one hand, or risking possible sanctions under the confidentiality rules, on the other.  Merely filing a petition with the CJC will not expose plaintiff to any form of penalty or sanction.  And, unless and until he files a petition with the CJC, plaintiff is entirely free to exercise his constitutional right to free

7

speech. He may freely discuss his alleged grievances whenever and with whomever he chooses, without violating any law or regulation. The CJC confidentiality rules simply do not apply to him <u>nor will they ever apply to him</u>, unless he should actually file a complaint against a New Hampshire judge with the CJC, thereby invoking its jurisdiction (and rules).

Currently, plaintiff's constitutional challenge is purely speculative and hypothetical; it does not arise from an actual or even an inevitable controversy. <u>See</u> <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971) (a case must involve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). The possibilities in this case are many, i.e. plaintiff might decide not to file a petition with the CJC after all; or, if plaintiff actually files a petition, the CJC might waive application of its confidentiality rules or substantially modify those rules as applied to him in this case; or, the CJC might amend its rules before any petition is filed; or, other circumstances might arise to moot any controversy.

If and when plaintiff should actually file a petition with the CJC, and if the rules as they now exist were invoked against (or were not waived for) plaintiff, then a declaratory judgment action would likely be ripe for judicial review. But then, and only then, would plaintiff be in the position of having to elect between honoring confidentiality rules he believes to be unconstitutional at the expense of his claimed right to free speech, or exercising his right of free speech at the risk of sanctions for violating those confidentiality rules. At that point, the precedents cited by plaintiff would appear to support his assertion of ripeness. See Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").[1]

II. Conclusion.

Succinctly stated, plaintiff's constitutional rights are not being, and cannot be impinged upon in any way by the CJC

---

[1] Plaintiff's complaint is not facially devoid of merit, see, e.g., Doe v. Florida Judicial Qualification Com'n., 748 F.Supp. 1520 (S.D. Fla. 1990), rather it seeks to invoke this court's jurisdiction prematurely, in the absence of an actual case or controversy.

confidentiality rules unless and until he files a complaint, thereby invoking the committee's jurisdiction and concomitant application of its rules to him. Until plaintiff files such a petition with the CJC, nothing he might do or say could possibly expose him to any sanctions under the rules he seeks to challenge, because they do not purport to limit the speech of anyone except those who file complaint petitions with the CJC. Plaintiff's challenge is not ripe for judicial review because it presents no actual case or controversy.

For these reasons and for the reasons set forth in the Magistrate Judge's Report and Recommendation, plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

February 27, 1995

cc: Theodore Kamasinski
    Attorney General, State of New Hampshire

10